Shawn Austin                                    :
                                                :
            v.                                  :
                                                :
Corrections Officer Hammers,                    :        No. 1494 C.D. 2021
                            Appellant           :        Submitted: February 10, 2023


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                          FILED:  June 21, 2023


            Corrections Officer Hammers (Hammers) appeals from the September
28, 2021, order of the Court of Common Pleas of Centre County (trial court).  The
trial court denied Hammers's motion for judgment on the pleadings on the basis that
Hammers failed to establish eligibility for sovereign immunity from the action filed
against him by Shawn Austin (Austin).  Upon review, we quash Hammers's appeal
because the trial court's interlocutory order is not an appealable collateral order.


## I.  Factual & Procedural Background

            On June 29, 2020, Austin, an inmate at the State Correctional Institution
at Benner Township (SCI-Benner), filed a complaint against Hammers in the trial
court.  Reproduced Record (R.R.) at 3a-5a.  Austin stated that the Department of
Corrections (DOC) has a policy allowing inmates up to four boxes of personal non-

contraband property, along with one additional box for legal materials, if they are granted permission. *Id*. at 3a. At some point in 2018, Austin was transferred to SCI-Benner's restricted housing unit (RHU). *Id*. He asserted that he packed his property before being transferred and it was within the DOC's rules. *Id*. However, Austin alleged that during the transfer, Hammers "unpacked, searched, and repacked my property in a haphazard, reckless, and/or otherwise negligent manner." *Id*. The result was that Austin's belongings appeared to be over the permissible property limit. *Id*. According to Austin, Hammers then ordered Austin to sign a property sheet for the remaining property under what Austin perceived to be a threat of disciplinary action against him. *Id*. Austin alleged that the "excess" property was subsequently confiscated and destroyed. *Id*. at 3a-4a.

Austin stated that after the incident, he filed a grievance in July 2018, which was denied. R.R. at 4a. He then filed his complaint in the trial court alleging that Hammers negligently handled his personal property.[1] *Id*. at 4a. Hammers filed preliminary objections and a brief in support thereof, asserting that although Austin's complaint was "couched" as sounding in negligence, his damages resulted from Hammers's intentional seizure of Austin's "excess" property within the scope of Hammers's duties and the DOC's policy. *Id*. at 7a-8a & 12a-14a. Hammers therefore averred that sovereign immunity protected him against Austin's lawsuit. *Id*. Austin responded in his brief that he alleged negligent conduct on Hammers's part; therefore, sovereign immunity was not available to Hammers. *Id*. at 18a-19a.

On November 10, 2020, the trial court issued a decision and order overruling Hammers's preliminary objection asserting sovereign immunity. R.R. at

---

[1] Austin also asserted that the destruction of books and pictures in his property violated his First Amendment rights under the United States Constitution. *See* U.S. Const. amend. I. R.R. at 4a. Given our disposition to quash Hammers's appeal, we do not reach or address that claim.

2

27a. The trial court concluded that Austin's claims "stemmed from the alleged haphazard re-packing of his property," which sounded in negligence, and not from Hammers's intentional implementation of the DOC policy. *Id*. According to the trial court, Hammers's confiscation and subsequent destruction of Austin's property may have been intentional, "but it was the result of [Hammers's] alleged negligence" in repacking Austin's property. *Id*. The trial court acknowledged that full discovery might validate Hammers's position, but based on Austin's complaint alone, the trial court "could not say with certainty that [Austin's] claims are barred by sovereign immunity," which does not shield government actors from liability for damage caused by negligent acts. *Id*.

On November 30, 2020, Hammers filed an answer denying the allegations in Austin's complaint and maintaining that sovereign immunity applies in this matter. R.R. at 30a-31a.[2] In August 2021, Hammers filed the motion for judgment on the pleadings that underlies this appeal. *Id*. at 83a-86a. The motion reiterated Hammers's assertion that the damages Austin alleges resulted from Hammers's intentional implementation of the DOC policy rather than any negligent action on Hammers's part. *Id*. at 84a-85a. Austin replied in his brief that his case is based on allegations of Hammers's negligence in unpacking and repacking the

---

[2] In new matter, Hammers claimed that Austin failed to exhaust his administrative remedies. R.R. at 32a-33a. Hammers asserted that although Austin appealed his grievance to the final review process, it was not decided on the merits but was dismissed as procedurally defective for failure to attach the property confiscation slip from the incident; therefore, Austin was bound to complete the grievance process to a final merits determination before he could proceed to the trial court. *Id*. Austin requested that this new matter be quashed because SCI-Benner's library copier was broken and he did not feel comfortable submitting his only copy of the document when prison authorities surely had access to it already. *Id*. at 81a-82a. The trial court declined to quash Hammers's exhaustion defense and Austin filed an answer reiterating his explanation. R.R. at 80a-82a. The issue appears to remain pending with the trial court.

property rather than any subsequent intentional conduct in confiscating and destroying it. *Id*. at 93a-95a.

On September 28, 2021, the trial court issued an order denying Hammers's motion for judgment on the pleadings. R.R. at 98a. The trial court explained that Hammers's assertions and arguments in the motion were "virtually identical" to those he raised in his preliminary objections and, based on its opinion in that matter, the court was denying the motion for the same reasons. *Id*. Hammers appealed to this Court. In a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), the trial court relied on its previous decisions and orders as the expression of its reasoning. R.R. at 104a.

## II. Discussion

Prior to considering the merits, we must address the appealability of the trial court's order. A trial court's order denying a motion for judgment on the pleadings is interlocutory and generally is not appealable to this Court unless the appellant receives permission or the order being appealed is determined to be collateral to the underlying cause of action and therefore appealable by right. *See County of Butler v. Local 585, Serv. Emps. Int'l Union, AFL-CIO*, 631 A.2d 1389, 1392 n.1 (Pa. Cmwlth. 1993).

Pennsylvania Rule of Appellate Procedure 313(b) vests appellate courts with jurisdiction to consider an otherwise interlocutory order if the order meets certain criteria and can be deemed collateral. *See* Pa. R.A.P. 313; *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 364 (Pa. 2021). Rule 313 provides:

> **(a) General rule.** An appeal may be taken as of right from a collateral order of a trial court or other government unit.

4

**(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313. The recognized three-part test, which tracks the language of Rule 313(b), is that a non-final order will be appealable as collateral if "(1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost." *Brooks*, 259 A.3d at 370. The collateral order doctrine is construed narrowly, and all three prongs must be met. *Id.* Due to the jurisdictional nature of the collateral order doctrine, courts may raise it *sua sponte*. *Id.*

The Commonwealth and its officials and employees acting within the scope of their duties enjoy sovereign immunity from suit except where such immunity is specifically waived. 1 Pa.C.S. § 2310. Because the right to assert sovereign immunity is "fundamental" and nonwaivable, courts must strictly construe the statutory exceptions. *Id.*; *Brooks*, 259 A.3d at 371. At issue here is whether Hammers's actions while handling Austin's property meet the exception permitting a suit for damages caused by negligence in "[t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including . . . [the] property of persons held by a Commonwealth agency[.]" 42 Pa.C.S. § 8522(b)(3).

Our Supreme Court concluded in *Brooks* that "the right to a sovereign immunity defense is too important to evade review before final judgment" and that the right would be irreparably lost if appellate review was postponed until after a final judgment by the trial court. 259 A.3d at 372-75. Here, therefore, the trial court's order denying Hammers's motion for judgment on the pleadings asserting

5

sovereign immunity meets the second and third prongs of the collateral order doctrine. Thus, whether the trial court's order in this case is appealable depends on whether it is separable from the merits of the underlying dispute so as to satisfy the first prong of the collateral order doctrine. Specifically, we must determine whether, on the basis of the pleadings alone, Hammers has established his right to sovereign immunity because Austin's allegations concerning Hammers's actions sounded in intentional torts.

An order is separable from the main cause of action if "it can be resolved without an analysis of the merits of the underlying dispute" and if it is "entirely distinct from the underlying issue in the case." *Brooks*, 259 A.3d at 372. In *Commonwealth v. Blystone*, 119 A.3d 306, 312 (Pa. 2015), our Supreme Court characterized the quality of separability as requiring the order being appealed to be "entirely" and "conceptually" distinct from the underlying merits of the case. Specifically, where an order denying an immunity defense indicates that genuine issues of fact remain at issue concerning the validity of the defense, as opposed to a purely legal determination, then the order will not be separable and appealable. *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 432 & n.11 (Pa. 2006) (adopting the United States Supreme Court's "distinction between summary judgment orders reflecting legal versus factual determinations" in *Johnson v. Jones*, 515 U.S. 304 (1995) as it is "consistent with the 'separateness' element of the collateral order doctrine").

In *Brooks*, the plaintiff sued Philadelphia's family court division for a personal injury she sustained at the family court building. 259 A.3d at 361. The family court division asserted in a motion for summary judgment that although it was a Commonwealth entity entitled to sovereign immunity, it was not a

6

"Commonwealth party" within the meaning of the Sovereign Immunity Act, 42 Pa.C.S. §§ 8501-8564; therefore, any exceptions waiving sovereign immunity did not apply. *Id*. The trial court denied the family court division's motion. *Id*. at 362. This Court concluded that the specific question on appeal, whether the family court was a "Commonwealth party" subject to the exceptions, was separable from the underlying matter because its resolution did not require factfinding or consideration of the merits of the plaintiff's negligence claim. *Id*. at 364. Although our Supreme Court reversed as to the third part of the collateral order test, it agreed with this Court as to separability. *Id*. at 371-72.[3]

By contrast, in *Strain v. Simpson House*, 690 A.2d 785 (Pa. Cmwlth. 1997), Strain, a nurse, brought a wrongful discharge claim against her former employer, Simpson House. *Id*. at 786. The Bureau of Professional and Occupational Affairs (Bureau) appealed a trial court's order granting Strain the ability to subpoena Bureau documents concerning the Bureau's investigation of her after a co-worker filed a complaint against her. *Id*. at 786-87. We concluded that the documents at issue were entwined with the merits of the underlying dispute, in which Strain asserted that the complaint lodged against her was false and retaliatory. *Id*. at 789. We therefore deemed the order granting the subpoenas not separable for purposes of the collateral order doctrine. *Id*.; *see also Gamble v. Pa. Tpk. Comm'n*, 578 A.2d 1366, 1358 (Pa. Cmwlth. 1990) (holding that motions to disqualify opposing counsel are not separable or collateral because they generally require examination of the merits of the underlying litigation).

---

[3] We acknowledge the discussion in *Brooks* concluding that orders denying immunity are ordinarily appealable. *See* 259 A.3d at 373-74. However, where a trial court's order reflects that factual issues remain concerning the propriety of an immunity defense, the order will not be separable and collateral. *Pridgen*, 905 A.2d at 432 & n.11.

Here, Hammers's statement of jurisdiction asserts that the trial court's order is appealable, citing Rule 313 and *Brooks*. Hammers's Br. at 1. Beyond that, the parties have not specifically briefed appealability, but as noted, courts may raise the issue *sua sponte*. Hammers reiterates that his actions were intentional and within his official duties to carry out the DOC's property policy; therefore, he asserts that sovereign immunity bars Austin's suit against him. This implies a position that no further inquiry is needed and that the trial court's order is immediately appealable. *Id*. at 7. Austin responds that sovereign immunity is not available to Hammers because the complaint alleged that Hammers repacked his property in a "careless, negligent, haphazard manner" that led directly to confiscation and destruction of whatever property that did not fit back into the boxes after Hammers unpacked them. This implies a position that further factfinding is warranted and that the trial court's order is not immediately appealable. Austin's Br. at 2-4.

The separability analysis set forth in *Brooks* is straightforward, and sovereign immunity with regard to inmate property disputes has often been addressed. In *Williams v. Stickman*, 917 A.2d 915 (Pa. Cmwlth. 2007), an inmate asserted that his television set was damaged while in the possession of corrections officers. The trial court dismissed Williams's complaint based on its view that the personal property exception applies only when personal property held by a governmental entity or employee causes injury to other persons or property. *Id*. at 917. We disagreed, concluding that the exception's plain language encompassed Williams's claim asserting negligence by the corrections officers in control of his property. *Id*. at 917-18 (stating that "here, the injury is the loss of the property itself"). Sovereign immunity was therefore not available to the defendants. *Id*.

8

In *Payne v. Whalen* (Pa. Cmwlth., No. 2100 C.D. 2014, filed Aug. 20, 2015), 2015 WL 5457835 (unreported),[4] Payne asserted that prison employees lost his family photos. We concluded that the matter sounded in negligence, and sovereign immunity was not available because Payne sufficiently pleaded that prison employees had a duty to care for inmate property in their possession, that the employees breached that duty, and that the breach resulted in his loss and damages. *Id*., slip op. at 10-11, 2015 WL 5457835, at *5.

In *Owens v. Commonwealth* (Pa. Cmwlth., No. 2624 C.D. 2015, filed Sept. 23, 2016), 2016 WL 5335684 (unreported), Owens alleged that prison employees who packed his belongings lost a pair of his boots. *Id*., slip op. at 2, 2016 WL 5335684, at *1. The prison employees argued that Owens's complaint pleaded an intentional tort, but we disagreed, finding the complaint clearly stated a cause of action rooted in negligence. *Id*., slip op. at 4-6, 2016 WL 5535684, at *2-*3. We therefore denied the prison employees' assertion of sovereign immunity, citing two "virtually indistinguishable" cases where inmates sufficiently asserted negligence claims concerning prison employees' negligent handling of their property. *Id*., slip op. at 4-6, 2016 WL 5535684, at *2-3 (citing *Palmer v. Doe* (Pa. Cmwlth., No. 2451 C.D. 2015, filed May 5, 2016), slip op. at 8-9, 2016 WL 2587417 at *3-*4 and *Samuels v. Walsh* (Pa. Cmwlth., No. 318 C.D. 2014, filed Nov. 17, 2014), slip op. at 4-6, 2014 WL 10298879 at *2-*3).

Hammers relies on several cases for his position that Austin's negligence claims are pretextual and do not fit within the personal property exception to sovereign immunity. Hammers's Br. at 10. In *Paluch v. Department of Corrections*, 175 A.3d 433 (Pa. Cmwlth. 2017), the inmate alleged intentional

---

[4] This Court's unreported memorandum opinions issued after January 15, 2008, may be cited for their persuasive value. 210 Pa. Code § 69.414(a).

destruction of his property by prison personnel but asserted that the negligence arose when prison personnel failed to advise him of their intent to confiscate his property. *Id*. at 441. This Court found the essence of Paluch's claims sounded in intentional tort and allowed the defendants to assert sovereign immunity. *Id*.

Hammers next cites *Goodley v. Folino* (Pa. Cmwlth., No. 2376 C.D. 2010, filed July 22, 2011), 2011 WL 10858491 (unreported). Goodley alleged negligent damage to his personal property by prison personnel. *Id*., slip op. at 3, 2011 WL 10858491, at *1. However, we concluded that the facts as pleaded did not sound in negligence, but rather the allegation that prison personnel had intentionally and deliberately seized and confiscated Goodley's property as contraband; therefore, sovereign immunity was appropriate. *Id*., slip op. at 7-8, 2011 WL 10858491, at *4.

Hammers also relies on *Price v. Simcox* (Pa. Cmwlth., No. 307 C.D. 2017, filed Sept. 28, 2017), 2017 WL 4287870 (unreported), where Price asserted that prison employees took books from his property boxes while he was relocated due to an asbestos issue at his facility. *Id*., slip op. at 1-2, 2017 WL 4287870, at *1. Like the inmates in *Paluch* and *Goodley*, Price alleged negligence on the part of the prison employees in possession of his property, but the trial court concluded that the facts as alleged sounded in the intentional tort of conversion and allowed the prison employees to assert sovereign immunity. *Id*., slip op. at 3, 2017 WL 4287870, at *1. This Court affirmed, agreeing with the trial court's reasoning. *Id*., slip op. at 4, 2017 WL 4287870, at *3.

Here, in the context of Hammers's motion for judgment on the pleadings, the trial court could only consider the facts in Austin's complaint to determine whether his claims sounded in negligence or intentional tort. *See Holt v. Nw. Pa. Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1138 n.8 (Pa. Cmwlth.

10

1997). The trial court concluded that the complaint raised a question of fact as to the nature of Hammers's actions, stating: "It may be that discovery would demonstrate that the re-packaging of [Austin's] property was undertaken in an intentional, deliberate manner." R.R. at 26a n.1. Moreover, the propriety of sovereign immunity here is inextricably related to the merits of Austin's case. Thus, we cannot say that Hammers's claim of sovereign immunity "can be resolved without an analysis of the merits of the underlying dispute" or that it is "entirely distinct from the underlying issue in the case." *Brooks*, 259 A.3d at 372. The issue of Hammers's right to claim sovereign immunity is therefore not separable from Austin's underlying claims. Accordingly, the trial court's interlocutory order denying Hammers's motion for judgment on the pleadings is not collateral and not appealable.

## III. Conclusion

For the foregoing reasons, the trial court's interlocutory order denying Hammers's motion for judgment on the pleadings is not an appealable collateral order. Therefore, this appeal is quashed.

_____
CHRISTINE FIZZANO CANNON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shawn Austin                     :

                              :

          v.                 :

                              :

Corrections Officer Hammers,    :    No. 1494 C.D. 2021

          Appellant         :

## O R D E R

AND NOW, this 21st day of June, 2023, Corrections Officer Hammers's appeal of the interlocutory September 28, 2021, order of the Court of Common Pleas of Centre County is QUASHED.

 

_____
CHRISTINE FIZZANO CANNON, Judge